HARRY SEGALL, Doing Business under the Trade Name of BUTLER-WARD & COMPANY, Respondent, *v.* GEORGE H. FINLAY et al., Copartners under the Firm Name of G. H. FINLAY & COMPANY, Appellants.

**Contract — sale — damages — sale of sugar c. & f. New York, April shipment from Cuba, insurance charged to buyer — place and date of delivery — measure of damages for breach.**

Under a contract, made in February, whereby defendants agreed to sell a specific lot of sugar to plaintiff " cost and freight New York, April shipment from Cuba," insurance to be charged to buyer, Cuba must be considered the place and April thirtieth the time when delivery ought to have been made; and, where defendants repudiated their agreement the day it was made, which repudiation was accepted by plaintiff twelve days later as final, the measure of damages is the difference between the contract price and the market price of the goods at the time when they ought to have been delivered. (Pers. Prop. Law, § 148; Cons. Laws, ch. 41.)

*Segall* v. *Finlay,* 218 App. Div. 723, affirmed.

(Argued March 3, 1927; decided March 29, 1927.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 1, 1926, affirming a judgment in favor of plaintiff entered upon the report of a referee.

*Robert H. Neilson* and *N. F. George* for appellants. The measure of damages is the difference between the contract price and the market price on the date of the anticipatory breach, February 28, 1923, of the contract for April delivery. (Pers. Prop. Law, § 148; Williston on Sales [2d ed.], §§ 587, 599; Sedgwick on Damages [9th ed.], §§ 636-e, 636-f; *Samuels* v. *Drew & Co.*, 286 Fed. Rep. 278; *Roehm* v. *Horst*, 178 U. S. 1; *Weld* v. *Postal T. C. Co.*, 199 N. Y. 88; *Goldfarb* v. *Campe Corp.*, 99 Misc. Rep. 475; *Baker* v. *Drake*, 53 N. Y. 211; *Gruman* v. *Smith*, 81 N. Y. 25; *Colt* v. *Owens*, 90 N. Y. 368; *Wright* v. *Bank of Metropolis*, 110 N. Y. 237; *Hurt* v. *Miller*, 120 App. Div. 833.)

*Walter Gordon Merritt* and *Charles F. Bailey* for respondent. On the happening of the anticipatory breach, the plaintiff was under no obligation to gamble on the market by purchasing another contract, but, under section 148 of the Sales Act, is entitled to recover the difference between the contract price and the market price on the date when the sugar ought to have been delivered. (*Roehm* v. *Horst*, 178 U. S. 1; Sedgwick on Damages, § 636-d; Williston on Sales, § 585; *Saxe* v. *Penokee Lumber Co.*, 159 N. Y. 371; *Todd* v. *Gamble*, 148 N. Y. 382; *Windmuller* v. *Pope*, 107 N. Y. 674; *Masterton* v. *Mayor of Brooklyn*, 7 Hill, 61; *Ruttonjee* v. *Frame*, 237 N. Y. 115; *Second National Bank* v. *Columbia Trust Co.*, 288 Fed. Rep. 17; *Guaranty Trust Co.* v. *Meer*, 114 Misc. Rep. 327; *Continental Co.* v. *Maun*, 117 Misc. Rep. 280; *Goldfarb* v. *Campe Corp.*, 99 Misc. Rep. 475.)

O'BRIEN, J. In February, 1923, appellants were dealers in sugar in New York and respondent was a sugar broker in Chicago. On the twenty-seventh and twenty-eighth

of that month telephone conversations occurred and telegraph messages were exchanged between them in respect to a proposed sale of sugar for future delivery. The complaint alleges a contract whereby defendants agreed to sell and deliver to plaintiff four thousand (4,000) tons at five and one-eighth (5⅛) cents per pound cost and freight New York. The referee has found on sufficient evidence and the Appellate Division has affirmed by a divided court subsequent to July 15, 1926, that the conversations as confirmed by the messages constitute a contract whereby defendants promised to make such a sale for future delivery, that plaintiff complied in all respects with his agreement, that defendants repudiated it on the day it was made and that plaintiff accepted the repudiation as final on March twelfth.

The only issue seriously to be considered relates to damages. Between February 28th, the date of repudiation by defendants, and March 12th several communications were exchanged between the parties and their attorneys. On the second date plaintiff accepted the repudiation as final and notified defendants that he would hold them responsible for all loss and damage. Under the agreement, defendants were entitled to delay until April 30th to begin transportation from Cuba, for the contract was " at five and one-eighth cents cost and freight New York, April shipment from Cuba." By the usual means of transportation the cargo would, in that event, have arrived at New York May 8th. A Sugar Exchange exists in New York where forward contracts for future delivery could be made. The difference between the contract price and the market value or the market price of a similar contract was $22,400 on February 28th and $50,400 on March 12th. The difference between the contract price and the market price on April 30th was $106,400. The market value on those dates was the same in Cuba and New York. The difference between the contract price and the market price in New York

on May 8th was $84,000. This agreement belongs to the class known as open market contracts. Such contracts for future delivery cover an actual quantity of sugar and this one ran against a specific cargo or was, at least, a contract for part of a specific lot of sugar. Its terms, the same as those included within the last contract which had been executed between the parties, provide that insurance was to be covered by the seller and was to be charged to the buyer at the customary rate. In short, it was an agreement to transfer property in a specific lot of sugar which was to leave Cuba April 30th and ,to arrive at New York May 8th, the buyer to pay a price which includes cost and freight (Williston on Sales [2d ed.], p. 621) and also to reimburse the seller for insurance.

Plaintiff urges that the measure of damages is the difference between the contract price and the market price at the time when the sugar *ought to have been delivered* and that such a time was April 30. Defendants argue that the measure is the difference, on the date of the anticipatory breach, between the contract price and the market price of a similar contract for April delivery and that such a date was February 28th.

February 28th is not the proper date for fixing damages. It is true that defendants repudiated the agreement on that day, but for two weeks thereafter the plaintiff attempted to conduct negotiations with them for the purpose of inducing them to fulfill it. Not until March 12th did he entirely relinquish all hope of success and only then did he accept the repudiation as final. It did not ripen into a complete breach before plaintiff's election to treat it as such. The view seems to prevail that as long as plaintiff reasonably entertained hope of compliance and had not accepted the repudiation as final, no anticipatory breach had occurred. (*Roehm v. Horst*, 178 U. S. 1; Williston on Sales, § 585.) Nor do we think that March 12th, the date of the breach, ought to be regarded

as proper. To select that date would require a disregard of section 148 of the Personal Property Law (Cons. Laws, ch. 41). That section provides by subdivisions 1 and 3 that where the property in the goods has not passed to the buyer and where there is an available market for them the measure of damages is the difference between the contract price and the market price of the goods *at the time when they ought to have been delivered.* No one can reasonably contend that the goods ought to have been delivered either on February 28th or March 12th. The inquiry leads to a consideration of the question whether the date for the fixation of damages is April 30th, when the sugar should have left Cuba, or May 8th, when it should have arrived in New York. The answer to this question is controlled by the intention of the parties relating to the time and place of *delivery.* No property in the goods ever passed to the buyer for even the sellers had no title at the times they made and repudiated their contract.

This contract in many respects resembles a c. & f. contract. Except for the provision relating to insurance it would constitute nothing else. The agreement that marine insurance from shore to shore including risk of lighters should be charged to the buyer renders difficult any other inference than one of an intent that the buyer would be responsible for loss during the voyage, that the sellers would divest themselves of responsibility when the sugar left the shore of Cuba and that delivery was contemplated there. Under the contract, therefore, Cuba must be considered the place and under the stipulation April 30 was the time when the delivery ought to have been made. Such presumptions as ordinarily arise from commercial usage respecting c. & f. contracts (Williston on Sales [2d ed.], pp. 621, 624) prevail in this case.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and KELLOGG, JJ., concur.

Judgment affirmed.